Antonio Ayala López, Plaintiff and Appellant, v. Félix Matías, Defendant and Appellee.

No. 7618.   Argued December 16, 1938.—Decided February 21, 1939.

*Gelpí & Gelpí,* for appellant.   *Oscar Souffront,* for appellee.

Mr. Justice De Jesús delivered the opinion of the Court.

Antonio Ayala López filed this suit to recover damages which he alleges he sustained when he was run over by an automobile driven by defendant, on June 4, 1935, on the road from Cabo Rojo to Mayagüez. He alleges in the complaint that the defendant, Félix Matías, when the accident occurred, was driving his automobile in a negligent and careless manner and at an excessive speed, without taking into consideration the width of the road and the traffic thereon, it being a well-populated place. That he was driving on the left side of the road and did not give plaintiff any warning. That the proximate cause of the accident suffered by plaintiff was the aforesaid negligence of defendant. That he has suffered personal damages, physical pains and mental worries and sufferings which he describes in the complaint and finally prays that a judgment be rendered ordering defendant to pay him the amount of $5,000 and attorney's fees.

Defendant answered and specifically denied the essential allegations of the sworn complaint and on the contrary alleged in substance that plaintiff, as well as defendant, were on their right of the road both going in the same direction; that defendant was traveling at a moderate rate of speed, approximately twelve miles per hour; that a long time before nearing plaintiff, defendant blew his horn and continued blowing it at different times, but noticing that plaintiff did not look back, he reduced the speed when he was about ten yards from plaintiff, blowing the horn loudly; that at this moment plaintiff tried to cross the road in the direction of his house, situated on the left of same, but that when he, plaintiff, had reached the center of the road turned back making zigzags in such a manner that he landed in front of the automobile; that defendant could not avoid hitting him and throwing him to the ground; that the car stopped on the very place on which it hit him, without running over plaintiff, since by that time defendant had been able to stop the vehicle completely. Defendant alleges that the sole cause of the accident was the

negligence of plaintiff in abandoning the safe spot where he was to cross the road in the direction of his house, without noticing the warnings of defendant, and without looking to both sides of the road at the moment when he intended crossing it. That there is a heavy traffic on that road and that there is no street or path crossing the road at that point; that therefore defendant had an open road. He denies that plaintiff has suffered the alleged damages and as a special defense reproduces what he had formerly alleged against the allegations of the complaint.

The case was heard on September, 1936, and after weighing the evidence of both partes and viewing the spot of the accident, the lower court rendered judgment dismissing the complaint without awarding costs. Against said judgment the present appeal was filed, to sustain which appellant, in a brief filed on September 29, 1937, alleges a single error in the lower court, to wit:

"The District Court of Mayagüez erred in the weighing of the evidence, in not believing that of the plaintiff, thereby showing it was moved by passion, prejudice and partiality, and committing manifest error in the weighing of the evidence in believing that of defendant, which was incredible owing to the facts which were declared proven in the findings of fact of the case and in the opinion. It is impossible that the events happened in the manner in which the Court states that they were proven."

The evidence is, in effect, clearly contradictory. Plaintiffi's consisted in his testimony and in that of the witnesses Emilio Carbonell, Ramón Silvestry, Fernando Ayala and Dr. Lassisse, who described the injuries received by plaintiff.

Each of them describes the accident in the following manner:

*Testimony of Antonio Ayala López:* He was coming from Cabo Rojo to his house, which is on the left-hand side of the road going to Mayagüez. He was walking on the left side of the road when suddenly he heard a noise behing him and when be turned around he was thrown to the ground by the

automobile. He did not hear claxon or horn. He was looking forward and at no moment did he look back. His house is on the edge of the road although it does not reach to the asphalt. There is no ditch on the side of the road where his house is situated. When he was thrown down by the automobile he was walking on the edge of the road outside of the asphalt. He cannot say which part of the automobile hit him. He can only assure that it was the front part.

*Testimony of Emilio Carbonell:* He lives in Cabo Rojo and knows defendant. On June 4, 1935, he was walking on said road, on his right, going towards Mayagüez, and was going to his house which is situated on said road near the place of the accident. That between 3 and 3:30 in the afternoon, he noticed that defendant's automobile was going on its right side in the same direction at a high speed, which made him throw himself to the ditch to avoid being run over. He continued walking and observed that near plaintiff's house there was a stone covered with blood. He was informed that it was there that defendant's automobile had run over the plaintiff. The witness then remarked that he was near being a victim of said automobile and that to avoid it he had had to throw himself in the ditch. Previously he had seen plaintiff walking on the left side of the road well to the left on the foot-path. He was carrying a bag in his hand but later he lost sight of him. When he arrived at the place of the accident plaintiff had been taken away and he noticed that defendant's car had a flat tire. It was not raining hard on that afternoon, but if was raining.

*Testimony of Ramón Silvestry:* He also lives in Cabo Rojo and knows both plaintiff and defendant. He saw the latter driving his automobile on the road from Cabo Rojo to Mayagüez at about 3 to 3:30 in the afternoon. There were three other men in the car. Of these he knows Juan Ramírez and Matías Graniela. He also saw the plaintiff, who was walking with some bundles in his hands about thirty meters away from defendant, in the direction from Cabo Rojo

to Mayagüez. At that moment, witness testifies, "Félix Matías was coming, driving his car, making zigzags, and this man (pointing to plaintiff) was on his left side of the road and when this man with the automobile passed in front of me, I was behind of the automobile and this other man was about two feet away from his house. There is a big stone there. The man was hit in the back and thrown down, underneath the car, his head in that direction and his feet towards Mayagüez. (T. of E., 23.) The car was coming at about 50 kilometers per hour and at that moment it was raining. He did not hear defendant blow his horn nor give any other warning, but he noticed that as he came he was making zigzags from left to right. The tire blew out before hitting the stone. The witness heard the explosion. The automobile skidded towards the left and could not keep to the right. The witness also threw himself into the ditch. Apparently defendant was inattentive; he was talking to Juan Ramírez, occasionally looking towards where don Juan was sitting. Plaintiff's son lifted him from under the car. The place where the accident occurred is well-populated and there is a lot of traffic there.

Neither this witness nor Carbonell testified in the Municipal Court in regard to the accident.

*Testimony of Fernando Ayala:* This witness was in his home, which is the house of his father, plaintiff in this case, and on hearing a noise, he stepped out and saw his father run down by an automobile. He immediately proceeded to lift him from under the automobile, aided by Policeman Padilla.

This is plaintiff's evidence as regards the way in which the accident occurred. The witnesses Carbonell and Fernando Ayala did not see it. Plaintiff could only say that he was walking on the left side of the road, that he heard a noise behind him and that on turning around he was run down by the automobile. That before this he had not heard any *claxon,* horn or any other warning.

Let us now see what defendant's evidence consisted of.

*Testimony of Juan Ramírez:* On the day of the accident it was raining. The witness saw plaintiff at a distance of about six or seven yards. He was walking on the right side of the road. The automobile was separated by about two yards from the ditch. Attorney for plaintiff submitted him to the following cross-examination:

"Q. When was it that you saw Antonio Ayala turn off, when you were at six or seven yards you saw him, before he turned off to cross the road?

"A. I saw him a few moments before crossing the road.

"Q. But moments before, seconds or minutes?

"A. Well, more or less before crossing the road. We were coming on the road and he crossed it.

"Q. Was he walking or running?

"A. No, he was walking.

"Q. And when the car came upon Antonio Ayala, what did it do?

"A. He put on the brakes, and when he was going, as the road was slippery, it did not stop.

"Q. Where did the car come to a stop?

"A. The car stopped on the road itself.

"Q. Is it or is it not true that he hit a stone and that one of the tires blew out?

"A. Not that I know of." (T. of E., p. 41).

According to this witness, plaintiff became confused and "threw himself on the car." He heard defendant blow his *claxon.* In his testimony he said that the injured man was taken to the hospital in defendant's car, but later he rectified and testified that he believed that they took him in another car.

*Testimony of Matías Graniela:* He was traveling in defendant's automobile, which was going at from twelve to fifteen kilometers per hour, at a very low speed. The accident occurred at about two or three yards from the left margin of the road. He saw plaintiff at about ten or twelve meters' distance, walking on his right side of the road. He

then crossed to the left taking two or three steps in that direction, and when he heard the *claxon* "he threw himself on the car."

*Testimony of Francisco Hernández:* Antonio Ayala was walking on the road down the slope and Félix Matías, the defendant, was coming for the same direction. Defendant blew his *claxon* and plaintiff crossed the road towards the left. Defendant tried as hard as possible to avoid the accident. Ayala fell in front of the automobile at a distance of two or three meters from his house. The left front tire of the automobile blew out. He did not see the stone. He was sitting on the front seat next to defendant, who is his brother-in-law. When the automobile was about two or three yards away from plaintiff, the latter started to cross the road, and continued walking toward the left in the direction of the automobile.

*Testimony of defendant Félix Matías:* On the day referred to, he was traveling with a few friends, "employees of the same farm where I work, and in passing in front of the hospital of Cabo Rojo, I saw Antonio Ayala and at that moment he crossed the road and I did everything possible to avoid the accident. I put on the brakes. One of the tires was old and when I put on the brakes it blew out and the car hit Antonio Ayala in front of the house." Defendant and plaintiff were coming on the right hand side of the road. Defendant was traveling at fifteen or twenty kilometers per hour and has been driving cars for more than four or five years. Defendants Ford is a 1930 model. The tire blew out as soon as he put on the brakes. When he first saw Ayala he was at about six or eight yards away and be blew his *claxon* to warn him. When he tried to cross the road he was near the car. Defendant tried to avoid the accident but Ayala continued in the direction of the car that was coming with a flat tire and it hit him. The automobile stopped by the big stone on the left of the road in front of Ayala's house. He saw that Ayala was going to cross the road and he blew his

*claxon,* but Ayala went on and witness tried to save him by swerving to the left. The car did not make any zigzag.

Referring to the aid given to plaintiff, he testified:

"They gave him an injection and the practitioner told me that he could not take care of him and I brought him to Mayagüez and there was no doctor who would treat him. I then went to Dr. Lassisse, who wanted to charge me $25 but we agreed on $20. The practitioner was made use of. He was in the hospital fourteen days and I always went to see him every other day, and took him something. Sometimes when I came from work I went to see him."

This is defendant's evidence, which was believed by the trial Judge.

The Court's view of the place of the accident does not give much light, but it is evident that plaintiff's evidence is very weak, if we take into consideration that his first witness, Carbonell, although he testified that defendant was driving at high speed, however, contrary to plaintiff's version, he also testified that he was walking on his right hand side of the road, so near the edge of it that he had to throw himself into the ditch to avoid being run down. The other witness, Silvestry, on the contrary testified that defendant was making zigzags and in one of them he went so far to the left that the witness also had to throw himself into the ditch, as Carbonell said he had done to avoid being run down by defendant's automobile. It should be noted that according to plaintiffs testimony, there is no ditch on the left side of the road going from Cabo Rojo to Mayagüez, and it is a curious coincidence that one and another witness in different places and at different times were subject to the same danger, one walking on the right side of the road and the other walking on the left side of the road. Plaintiff could not clear up this matter, since according to his testimony he came to notice the nearness of the automobile at the moment of being run down by it.

Defendant's evidence is stronger and more logical than that of plaintiff. Of course we do not believe that part of it

which states that defendant's automobile was going at a speed of from ten to fifteen kilometers because this is such a slow speed that it is only in special cases that it is used, and in this case there does not appear from the evidence to have existed any reason for defendant's automobile to travel at such a low speed.

The version of some of defendant's witnesses appears to us to be more logical. Plaintiff and defendant were going on the right side of the road from Cabo Rojo to Mayagüez. When defendant's automobile approached plaintiff, the latter turned suddenly to the left for the purpose of entering his house. When he had walked but two steps, defendant blew his *claxon.* Plaintiff became confused and instead of staying in the place where he was, he did what frequently happens, that is, became confused and tried to cross the road before the automobile could reach him. Defendant tried to swerve the car to avoid running plaintiff down and in that manner they both reached the left-hand edge of the road where the accident finally accurred.

In our opinion, the judge of the lower court did not commit error in weighing the evidence and decided the conflict correctly. The doctrine of last clear chance is not applicable to this case since defendant at no time had a chance to avoid the accident, since this happened suddenly when plaintiff tried to cross the road at a time when defendant's automobile was so near him that it was difficult for the latter to avoid it.

The judgment appealed from should, therefore, be affirmed. However, the award of costs should be modified. Costs should be awarded to defendant in accordance with the law which was in effect at the time the judgment was rendered which provided that costs should be awarded to the party in whose favor judgment was rendered.

Mr. Chief Justice Del Toro took no part in the decision of this case.